Giordano v. Powell                    CV-92-522-B    08/05/94

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

Vincent Giordano

        v.                           Civil No. 92-522-B

Ronald Powell, et al.


**O R D E R**

On May 27, 1994, I held an evidentiary hearing on the state's motion to dismiss (document no. 24).  Based on the evidence presented, I conclude that Giordano willfully made materially false allegations in the in forma pauperis affidavits and declarations he filed in this case, and that the misconduct is part of a pattern of filing false affidavits in other cases. The egregiousness of this conduct warrants the extreme sanction of dismissal with prejudice.  I therefore grant the defendants' request.


**FINDINGS OF FACT**

The State has proved the following facts by a preponderance of the evidence:

1.  Giordano filed two pro se civil rights complaints (Civil Nos. 92-522 and 92-526) on or about October 8, 1992.  These

complaints were later consolidated and became the present action.

2. Giordano filed a motion to proceed in forma pauperis and a supporting affidavit and financial declaration in each case.

3. Giordano executed his affidavit in case no. 92-526 on September 25, 1992. He executed his affidavit in case no. 92-522 and both financial declarations on October 2, 1992.

4. The affidavits and declarations Giordano filed in both cases are substantially similar. In each, Giordano alleges that he earned monthly wages of $30 and that he had less than $90 cash on hand when the declarations were executed. Both declarations also state "none" in response to questions seeking information about savings and checking accounts.

5. When Giordano executed and filed the affidavits and declarations, he had approximately $2,850 in a savings account at New Dartmouth Bank (Account No. 06278708), $73 in a checking account at the same bank (Account No. 420471849) and approximately $1,010 in a passbook savings account at Concord Savings Bank.

6. Giordano was aware of the balances in his checking and savings accounts when he executed and filed the affidavits and declarations. Giordano claims that he believed that the affidavits were accurate when executed and filed because (1) he

forgot about the checking accounts; and (2) he believed that he had committed substantially all of the funds in the two savings accounts to an attorney who had agreed to represent him on one of his civil rights claims. I specifically reject this claim.

7. Giordano is an intelligent and experienced pro se litigator who has filed more than a dozen lawsuits. Thus, when he prepared and filed his affidavits and declarations, he was well aware of his duty to disclose his checking and savings accounts.

8. Giordano's failure to disclose his substantial account balances at New Dartmouth Bank and Concord Savings Bank was part of a carefully conceived plan to willfully and in bad faith gain in forma pauperis status. He knew that he would not be eligible for such status if he disclosed his account balances.

9. Giordano's willfully incorrect statements were material to the clerk's decision to accord him in forma pauperis status.

## II. ANALYSIS

A. Giordano's Explanation

Before explaining my rejection of Giordano's claim that he did not willfully fail to disclose his checking and savings accounts, I first describe his claim in greater detail.

3

Giordano contends that he was attempting to convince Attorney David Bownes to represent him on one of his civil rights claims. According to Giordano, Bownes told him that he would represent him if he could come up with a $5,000 fee advance. Although Giordano didn't have $5,000, he claims that he decided in late September 1992 to send Attorney Bownes as much money as he could in an effort to convince Bownes to take his case.

Because Giordano was incarcerated, he did not have direct access to his bank accounts. However, he was able to access his New Dartmouth account by instructing the bank in writing to debit his account and write checks on his behalf. In order to access his passbook account at Concord Savings Bank, Giordano had to instruct the prison's treasury department to send his passbook to someone else who would then present the passbook at the bank with a signed withdrawal slip. Thus, in order to implement his plan, Giordano claims that he prepared the paperwork necessary to have $2,850 withdrawn from his New Dartmouth account and $975 withdrawn from his Concord Savings Bank account on or about September 29, 1992. He then claims that he sent the paperwork to the prison treasury department with a request that his Concord Savings Bank passbook be sent with the paperwork to New Dartmouth Bank. Giordano further claims that his paperwork instructed New

4

Dartmouth Bank to prepare a $2,850 check and send the check, the Concord Savings Bank passbook, and a $975 withdrawal slip to Attorney Bownes. Since these transactions would have substantially depleted his savings accounts by October 2, 1992, Giordano claims he did not knowingly misrepresent his financial condition when he failed to disclose these accounts. He explains his failure to list his New Dartmouth checking account by claiming that he simply forgot about it.

I reject Giordano's explanation for several reasons. First, Giordano admits that he never fully executed his alleged plan. Indeed, since Giordano's Concord Savings Bank passbook never left the prison treasury department, the plan never got beyond its first crucial step. While it is theoretically possible that prison officials either lost the paperwork or disregarded Giordano's instructions, these explanations are implausible. Although Giordano produced copies of the letters he allegedly sent to New Dartmouth and Attorney Bownes to implement his plan, these letters are entitled to little weight because they could easily have been produced after the fact. More telling is Giordano's inability to produce his copy of the request slip he allegedly sent to prison officials, instructing them to send his Concord Savings Bank passbook to New Dartmouth Bank. Since

5

Giordano admits that he has several boxes of records concerning his interactions with prison officials, his inability to produce his copy of the request slip casts doubt upon the accuracy of his testimony.

Second, after allegedly learning that Attorney Bownes had not received either the New Dartmouth check or the Concord Savings Bank passbook, Giordano did not behave like a person whose plan had failed. Ordinarily, if an inmate learns that prison officials failed to carry out his instructions, and that his savings account passbook never reached its intended destination, I would expect the inmate to be concerned enough to complain to the prison officials who were supposed to carry out his instructions. However, neither Giordano nor the prison officials have produced any evidence establishing that he ever asked them to explain why his instructions were not carried out.

Third, even if Giordano's story were true, it does not explain why, in his financial declarations, he stated "none" in response to questions concerning checking and savings accounts. Giordano is an intelligent person who would have been aware that he still had open savings accounts at New Dartmouth and Concord Savings Bank, even if his alleged dealings with Attorney Bownes had come to fruition. If Giordano believed that these account

6

balances were minimal, he could have identified them on his declarations in the same way he disclosed the minimal balance in his prison account. His failure to do so is more consistent with the actions of a person who is deliberately concealing substantial account balances than a person who fails to disclose accounts with minimal balances because he believes that the information is insignificant.

Fourth, I cannot accept Giordano's claim that he forgot about the $73 in his checking account. For a person who claims in a financial affidavit that he earns $30 per month and has less than $90 in his prison account, $73 is a considerable sum. It would be hard to overlook. Moreover, the $73 checking account balance is clearly reflected in the bank statements Giordano admits that he periodically received at the prison.

Finally, by demonstrating that he filed materially false financial declarations in state court cases on November 13 and 19, 1992, the defendants established that Giordano followed a pattern of preparing and filing false financial affidavits in other cases. Since Giordano had no plausible explanation for the false statements contained in these declarations, his overall conduct suggests that his false filings in the present case were part of a larger plan to conceal his assets and improperly obtain

7

the benefits of in forma pauperis status in a number of cases.

In summary, after considering Giordano's testimony in light of the surrounding circumstances, I conclude that his explanation is false and that it was prompted by a willful effort to conceal the fraudulent nature of the affidavits and declarations that he had previously filed.

B.  The Sanction

28 U.S.C. § 1915(d) authorizes a court to dismiss a case in which the plaintiff has gained in forma pauperis status by filing a false poverty affidavit.  Although the First Circuit Court of Appeals has not determined when a false filing may result in dismissal with prejudice, every other circuit that has considered the issue has concluded that a court may dismiss a complaint with prejudice when the filing was willful and in bad faith.  Matthews v. Gaither, 902 F.2d 877, 880 (11th Cir. 1990); Romesburg v. Trickey, 908 F.2d 258, 260 (8th Cir. 1990); Thompson v. Carlson, 705 F.2d 868, 869 (6th Cir. 1983); Harris v. Cuyler, 664 F.2d 388, 390 (3rd Cir. 1981).

Admittedly, dismissal with prejudice is an extremely harsh sanction that should be reserved for truly extraordinary cases. See Estate of Solis-Rivera v. United States, 993 F.2d 1, 2-3 (1st Cir. 1993).  This, however, is one such case.  I have already

noted that Giordano willfully provided materially false statements in his in forma pauperis affidavits and declarations. He then compounded this misconduct by offering willfully false testimony in an effort to cover up his fraudulent statements. In view of Giordano's outrageous conduct and the fact that the misconduct is part of a pattern of filing false in forma pauperis affidavits in other cases, I conclude that dismissal with prejudice is the only appropriate means of protecting the court's processes from this type of abuse.

### III. <u>CONCLUSION</u>

For the above-stated reasons, the defendant's motion to dismiss (document no. 24) is granted and the case is dismissed with prejudice. The clerk's office shall enter judgment accordingly.

SO ORDERED.

 

 

_____
Paul Barbadoro
United States District Judge

August 5, 1994

cc:  Martin Bender, Esq.
     William McCallum, Esq.

9